### F. S. ROYSTER GUANO CO. v. FOWLES.

1. DEEDS—EASEMENT—GRANT.—Under a deed granting the right to the free and unobstructed use of the waters of certain springs and pond, with the right to open and maintain a ditch across lands of grantor to convey the water to the lands of grantee, construed in the light of the circumstances and conditions at time of execution, grantee has the right to locate his ditch so as to draw to his reservoir all the water afforded by the springs and pond, but not to require grantor to maintain the pond in the condition it was in at time of grant, nor to use

pond to store water in for his use, and grantor has right to draw from pond and springs *only* such surplus water as grantee does not use.

2. EQUITY—IBID.—SUPREME COURT—APPEAL.—Under a complaint seeking to restrain diversion of water by means alleged, and also further threatened diversion in violation of the grant, the Court has the power to consider act done subsequent to action brought by extending a ditch referred to in pleading as a method of diversion and to grant complete relief against it. The Circuit Court having refused plaintiff this right, this Court, under its general chancery powers, will grant it on appeal.

Before J. P. CAREY, special Judge, Richland, July, 1905. Modified.

Action by F. S. Royster Guano Co. against Adeline J. Fowles and J. Newton Fowles. The following is the Circuit decree:

"The plaintiff is a corporation engaged in the business of manufacturing fertilizers near the city of Columbia. Its plant is located on a tract of land containing fifteen acres purchased from the defendant, Adeline J. Fowles, in May, 1901. This defendant at the time of the purchase and ever since owned the lands north of the fifteen acre tract sold the plaintiff on which near the plaintiff's tract there is alleged to have been for many years a pond of water fed by certain springs and surface water. In the deed to the plaintiff there is a provision as to the use of water out of this pond by the plaintiff. At the time of the purchase of the fifteen acres there was a ditch from the pond leading in the direction of what is known as Hampton's pond, and designated in this litigation as the 'old ditch.' The plaintiff alleges that during the month of December, 1901, the defendant, Adeline J. Fowles, and the defendant, J. Newton Fowles, acting as her agent, in disregard of the said provisions of said deed, proceeded to open and deepen said old ditch along the line of said ditch and out in said pond for an additional depth of eighteen inches or two feet, whereby

the level of the pond has been permanently lowered and the water thereof conducted away from the pond and diverted from the use of the plaintiff's manufactory. The plaintiff further alleges that the defendants propose, threaten and declare an intention to continue to open and deepen said ditch until the pond is entirely dry. This action is brought to secure an injunction against these alleged acts and threatened acts on the part of the defendants. Usually an injunction is not the remedy for past injuries. It is a preventive remedy and not a corrective one. But a remedy for a past injury may sometimes be given as an incident to an injunction. But this is only where the right to an injunction is clear and the injury is the result of the wrong it is sought to enjoin. The ditch was opened before this action was filed and the testimony shows no efforts for an injunction were made to stop the work during its progress, and that the plaintiff under what it conceived to be its rights in the matter proceeded to deepen and run its own ditches so as to obtain practically all the water of the pond and springs for its own use except in wet weather. Under such facts an injunction will seldom be granted. In the case of *Railroad Company* v. *Lumber Company,* 45 S. C., 126, in referring to this principle, the Court says: 'Especially is this so, when we think that the decided weight of the testimony shows that the tramway, the construction of which is sought to be enjoined, as well as the operating of the same, was fully completed before these proceedings were commenced; and the fact that the petitioner stood by and allowed this work to be done without taking any legal steps to prevent it, but chose rather, through its president, to protect its alleged rights by force and arms, does not commend this application to the favor of the Court.' But I do not propose to rest my decision upon this ground. It is important that the rights of the parties to this action be determined to prevent further litigation, and especially that the deed in question be construed. I, therefore, propose to consider all the questions arising out of the pleadings. The order of reference only

directed the master to report the testimony to the Court. I am, therefore, without the aid of any findings of fact on his part, and must extract myself the material facts from seven hundred pages of testimony. The deed from Adeline J. Fowles to the plaintiff is dated May 20, 1901. and is a regular fee simple conveyance. After the description of the land therein conveyed there are the following words, 'And also the right at all times to the free and unobstructed use of the waters of the spring and pond lying north of the parcel hereinabove granted and the right to open and maintain a ditch leading from the said spring and pond across the land lying between the same and the parcel hereby granted, and the right of ingress and egress to and from the lands adjacent thereto for the purpose of opening, cleaning and maintaining said ditch.' These words must be construed in the light of the conditions and circumstances existing at the date of the deed containing them. I will, therefore, set forth these conditions and circumstances as I think the testimony shows them to have been. In the year 1894 the defendant, Adeline J. Fowles, purchased three hundred acres of land from Julia C. Marshall. The fifteen acres conveyed to the plaintiff is a part of this land. At the time of the purchase by Adeline J. Fowles there was evidently a permanent pond of water containing several acres on this land near the fifteen acres now owned by the plaintiff, fed by the spring basin north of the plaintiff's plant, what is known as the 'Folk' spring, and the surface waters which flowed into the depression from the surrounding elevations. In 1896 the defendants cut the ditch described now as the old ditch for the purpose of draining this pond for the purpose of cultivation. This ditch practically drained the pond, and the lands formerly covered by water, or a larger portion thereof, were cultivated in the years 1897, 1898, 1899 and 1900, in rice, corn, potatoes and hay, and used for a portion of the time as a pasture. In the fall of 1900 the pond was nearly dry, the members of the board of health so testifying. During the winter and spring of 1901 considerable water,

owing to the rains, collected in the basin of this pond, and at
the time the fifteen acres was deeded to the plaintiff in May,
1901, this water probably covered two or three acres of land,
and was from two or three inches to three feet deep. The
old ditch was somewhat filled up on account of the rains, but
water from the pond was then flowing through it. The
plaintiff in the manufacture of its goods uses much water,
and for this reason its officers selected the site in question for
the location of the factory. The president visited the loca-
tion about the first of May and inspected the site and water
conditions. During the following summer and fall the fac-
tory was erected and put in operation. The plaintiff dug
its ditches to the pond and drew its water therefrom into
wells or reservoirs constructed on its own land. In the light
of these facts and circumstances, what is the proper con-
struction of the covenants in the deed of May 20, 1901?
There is no difficulty as to the plaintiff's right to open and
maintain its ditches to the waters afforded by the pond and
springs and its right of egress and ingress over the land
of the defendant, Adeline J. Fowles, for that purpose. All
this is conceded, even if it results in giving the plaintiff all
the water. The difficulty arises over the use of the words:
'The right at all times to the free and unobstructed use of the
waters of the spring and pond lying north of the parcel
hereinabove granted.' It is contended by the plaintiff that
these words create an easement in favor of the plaintiff, and
that the defendant, Adeline J. Fowles, is bound to allow the
waters of the pond and spring to remain in the conditions
they were in at the date of the deed, and that she has no
right to deepen or clean out the ditch leading from said
pond. The deed does not convey the land covered by the
water, nor does it attempt to convey the water itself. There
are no words in it which could be construed into an agree-
ment to store water for the use of the plaintiff by the defend-
ant, Adeline J. Fowles, or to allow the plaintiff to maintain
a pond on her land. But it is claimed this arises by implica-
tion. I do not think so. It is the 'free and unobstructed

use of the water' the plaintiff is entitled to. This means that it may enter and take all the water it wants. I do not think that it means that the grantor of the deed must provide or store the water on land not conveyed. If it does, she had just as well have conveyed the land on which the water stood. This construction would be reaching by implication the equivalent of an actual conveyance of both land and water. The provision in the covenant that the plaintiff have the right to cut and maintain its ditches to both pond and spring on the far side of the pond sustains the construction that the object of the deed was to furnish the plaintiff the free and unobstructed use of the water it might desire to draw off and no more. If the grantor was compelled to store the water, no necessity to ditch farther than the edge of the pond could arise. The grant of an easement carries with it what is necessary for the enjoyment of what is granted. The use of the water and the right to enter and take it, in my judgment, is the proper construction of the words of the deed now under consideration. I do not think, therefore, Adeline J. Fowles has breached the covenant in her deed by cleaning out what is known as the 'old ditch.' It is alleged that she has both opened and deepened the ditch. The testimony does not satisfy me that the ditch has been deepened lower than it was at the date of the conveyance. The weight of the testimony is to the effect that it has only been cleaned out, and I so find. I do not see how the words of the deed can be so construed as to prevent the grantor from cleaning out a ditch from the pond in existence at the date of her deed and through which water from the pond was then flowing. The plaintiff took its right to use the water, subject to the right of the grantor to use and clean out this ditch on her own property. Any other construction would require her to not only cease to use but to fill it up. This is carrying implication too far and to a point not justified by the words of the covenant in her deed. The plaintiff seems to have recognized the right of the defendant to clean out this ditch, for in the letter of the vice-

president, dated November 19th, 1901, it is stated that the company would stand half the expense, provided it did not exceed ten dollars. My conclusion, therefore, is that the defendants have not breached the covenants contained in the deed of May 20, 1901, by merely cleaning out the ditch in question.

"It is also alleged that the defendants propose, threaten and declare an intention to further deepen and open said ditch till the pond is entirely dry. There is a total failure of the evidence to make out this allegation, and injunction could not be rested upon the ground that the defendants intend to so deepen this ditch as to defeat or interfere with the rights secured by the deed of May 20, 1901. Much has been said by both sides as to the competency of the parol testimony as to rights growing out of this deed. In so far as this testimony tends to contradict, vary or add to the provisions of the deed, or to create an easement in land, I think it is incompetent, and sustain the objection to it. But in so far as said testimony throws light upon the circumstances and conditions surrounding the parties at the time the deed was made, I have considered it in reaching my conclusions, for it is in the light of these that the deed must be construed.

"Much testimony was taken and much argument made before me as to what is called in this contest the 'new ditch.' In November, 1903, the defendants partly opened an old ditch leading in the direction of the spring basin opposite the plaintiff's works, and at the upper end of this ditch dug a new ditch for a few yards, the effect of which was to divert the water from this spring basin in such way that it could not enter the ditch of the plaintiff cut for the purpose of carrying the water to its works. I do not see that I have the right to make any order as to this partially old and partially new ditch. The acts relating to it were done after the action was commenced and while the action was pending. On December 9th, 1903, Mr. Justice Jones, on hearing a rule to show cause why the defendants should not be attached

for contempt in disobeying his temporary order of injunction, passed an order requiring the defendants to restore the status by closing this ditch within five days, which was done. In addition to this, the case is before me on its merits, and I must decide it on the issues made by the pleadings. In vol. 10, Ency. P. & P., 1098, it is said: 'The Court in rendering its decree should conform to the prayer of the bill, and the decree should be confined in its scope to the matters in issue. Under the general prayer for relief the plaintiff is entitled to such relief as his case may require. But such prayer does not entitle the plaintiff to any relief not warranted by the facts, not alleged and proved.' In the case of *Moon* v. *Johnson*, 14 S. C., 434, it was held that a plaintiff could recover only upon the cause of action existing when suit was commenced. That was a suit to recover lands. The plaintiff showed on the trial that he obtained his deed after the action was brought, and was nonsuited. The Court uses this language: 'In an action to try titles, as in all other actions, the question always is, did the plaintiff have a cause of action when the suit was commenced. He must stand or fall on the cause of action as it existed when he brought his suit.' In the case of *Cudd* v. *Calvert*, 54 S. C., 473, it is said by Mr. Chief Justice McIver: 'If the facts alleged in the complaint can be established upon a trial on the merits, where the witnesses can be subjected to examination and cross-examination, then we do not think that it can be denied that the plaintiffs would be entitled to the injunction prayed for.' My conclusion, therefore, on the whole case, is that the plaintiff is not entitled to the injunction sought by it in this action, and it follows that the complaint should be dismissed.

"It is, therefore, ordered and adjudged, that the complaint be dismissed."

### EXCEPTIONS.

The plaintiff appeals on the following exceptions:

"1. Because the presiding Judge erred in not construing

the covenants in plaintiff's deed in the light of the conditions and circumstances existing at the time of its execution.

"2. Because the presiding Judge erred in his findings as to the conditions and circumstances under which the deed in question was executed.

"3. Because the presiding Judge erred in holding that 'in 1896 the defendants cut the ditch described now as the "old ditch" for the purpose of draining this pond for the purpose of cultivation.'

"4. Because the presiding Judge erred in holding that 'this ditch practically drained the pond, and the lands formerly covered by water, or a large portion thereof, were cultivated in the years 1897, 1898, 1899, and 1900, in rice, corn, potatoes and hay, and used for a portion of the time as a pasture.'

"5. Because the presiding Judge erred in holding that the pond in the fall of 1900 was nearly dry, and that 'in the winter and spring of 1901 considerable water, owing to the rains, collected in the basin of the pond, and at the time the fifteen acres was deeded to the plaintiff, this water probably covered two to three acres.'

"6. Because the presiding Judge erred in not holding that the 'old ditch' was dug in 1896, and thereafter maintained for the purpose of reducing the area and level of the pond and taking off the surplus waters of the pond in times of heavy rains or exceptional fullness.

"7. Because the presiding Judge erred in not holding in clear and distinct terms that at the time the plaintiff bought the fifteen acre tract, in the spring of 1901, there was a well defined pond of water actually in existence upon adjoining lands of defendant, A. J. Fowles, covering four to five acres.

"8. Because the presiding Judge erred in not holding that at the time of plaintiff's purchase the basin of the pond was not drained and was not in cultivation, and because he should have held that an area of several acres had never been drained nor cultivated.

"9. Because the presiding Judge erred in not holding that the existence of a permanent body of water in the pond was an inducement held out by defendant to plaintiff in making its purchase.

"10. Because the presiding Judge erred in not holding that the defendants induced plaintiff to make its purchase by representing that the pond and spring referred to in the deed furnished an abundant and never failing supply of water.

"11. Because the presiding Judge erred in construing the deed in question to mean that the use of the water and the right to enter and take it was all that was granted thereby.

"12. Because the presiding Judge erred in holding that there are no words in the deed which could be construed into an agreement to store water for the use of the plaintiff by the defendant, A. J. Fowles, or to require the defendant to allow a pond to remain on her land.

"13. Because the presiding Judge erred in holding that the right to have the water held and stored upon defendant's land did not arise by implication from the terms of the deed, but held that the defendants had the right to drain off the pond, and so deprive the plaintiff of the use of the waters thereof.

"14. Because the presiding Judge erred in not holding that the right to the free and unobstructed use of the waters of the spring and pond devolved upon defendants the obligation of allowing the pond to remain in the condition it was at the time of plaintiff's purchase.

"15. Because the presiding Judge erred in not holding that the right of plaintiff to use the waters of the springs and pond was superior to the right of defendants to drain off the pond.

"16. Because the presiding Judge erred in so construing the deed as to make plaintiff's right to use the water conditioned upon plaintiff draining the pond.

"17. Because the presiding Judge erred in holding that the provision in the deed that plaintiff have the right to cut

and maintain its ditches from the spring and pond sustains the construction that the object of the deed was to give plaintiff the right to draw off the water and no more.

"18. Because the presiding Judge erred in finding that the 'old ditch' had not been deepened lower than it was at the date of the deed, and that the testimony showed that it had only been cleaned out.

"19. Because the presiding Judge erred in not finding that the 'old ditch' has been deepened lower than it was at the date of the deed, and that such deepening has drained off the water which stood in the pond when plaintiff's purchase was made, in violation of the covenant in plaintiff's deed.

"20. Because the presiding Judge erred in his holding that 'in November, 1903, the defendants partly opened an old ditch leading in the direction of the spring basin opposite the plaintiff's works, and at the upper end of this ditch dug a new ditch for a few yards;' whereas, he should have held that said ditch was not in existence at time of plaintiff's purchase, but was dug for practically its entire length in November, 1903.

"21. Because the presiding Judge should have held that the digging of the 'side or new ditch' was a clear diversion of the water of the spring and pond and a clear violation of the covenant in plaintiff's deed.

"22. Because the presiding Judge erred in holding that defendants have not breached the covenants in the deed by the work done either upon the 'old ditch' or upon the 'side or new ditch.'

"23. Because the presiding Judge should have held that the spring north of plaintiff's land is the spring referred to in the deed and the main water supply, and that the digging of the 'side or new ditch' was a material diversion of the water supply granted by the deed.

"24. Because the presiding Judge erred in holding that 'there is no difficulty as to plaintiff's right to open and maintain its ditches to the water afforded by the pond and springs, and its right of egress and ingress over the lands

of the defendant, A. J. Fowles, for that purpose,' and erred in holding that all this was conceded.

"25. Because the presiding Judge should have found that the defendants have obstructed and interfered with the plaintiff in obtaining the use of the water from the spring, and denied to plaintiff the right of ingress and egress to and from the adjacent lands for the purpose of maintaining its ditches, in violation of the covenant in the deed.

"26. Because the presiding Judge should have held that the deepening of the 'old ditch,' the digging of the 'new or side ditch,' and the filling in of the head of the runlet from the spring north of the pond, have caused such a material diversion of the water supply granted by the deed as to make a scarcity of water, to the damage of the plaintiff, and to materially affect the value of the easement granted by the deed.

"27. Because the presiding Judge erred in holding that under the scope of the complaint the plaintiff did not have the right to enjoin the diversion of the water of the spring and pond through the 'side or new ditch.'

"28. Because the presiding Judge should have held that defendant's work in diverting the water of the spring and pond was not completed before plaintiff commenced its action.

"29. Because the presiding Judge should have found that there was a clear diversion of the water of the spring and pond and a violation of the easement in the deed, and should have held that plaintiff was entitled to an injunction.

"30. Because the presiding Judge should have found that plaintiff, in order to enjoy the easement granted by the deed, is entitled to have the 'old ditch' filled in to such an extent as will restore the pond to the condition it was in at the time of plaintiff's purchase—that is, so as to make a pond of water covering from four to five acres, and is entitled to have the 'side or new ditch' filled in entirely, and should have held that plaintiff's remedy therefor was an injunction.

"31. Because the presiding Judge erred in finding that the evidence fails to show that defendants 'propose, threaten and declare' an intention to further deepen and open the 'old ditch' till the pond is entirely dry.'

"32. Because the presiding Judge erred in holding that plaintiff is not entitled to an injunction upon the ground that defendants intend to so deepen the ditch as to defeat or interfere with the rights secured by the deed in question.

"33. Because the presiding Judge should have held that injunction is the proper remedy for violation of an easement, and that under the facts in this case plaintiff was entitled to an injunction.

"34. Because the presiding Judge erred in refusing the injunction as prayed for, and in holding that plaintiff was entitled to no relief.

"35. Because the presiding Judge erred in dismissing the complaint."

*Messrs. Melton & Belser* and *Thomas & Thomas,* for appellant.

*Messrs. Melton & Belser* cite: *As to construction of grant:* 10 Ency., 2 ed., 411, 429, 419; 37 La. Ann., 242; Domats Civ. Law, Pt., bk. 1, tit. 12, sec. 4, art. I.; 9 Cyc., 1201; 25 Ch. Div., 559; Wash. on Eas., 39; Gould on Waters, 158, 588; 41 Mim., 270; 134 N. Y., 385; 47 N. Y., 81; 81 N. Y., 566.

*Mr. John P. Thomas, Jr.,* cites: *Expression of Judge granting temporary order is not binding on parties:* 60 S. C., 569; 62 S. C., 221. *As to construction of grant:* 17 Ency., 1 ed., 23; 1 McC., 48; 10 Ency., 2 ed., 398, 429; Wash. on Eas., sec. 2; 28 Ency., 1 ed., 1035; Broom's Legal Maxims, sec. 463; Dom. Civ. L., bk. 1, tit. 12, sec. 4, art. 1; 30 Me., 94; 5 Rich., 406; 2 Rich., 158; 22 S. C., 168; 28 Ency., 1 ed., 1027; 34 Me., 394; 16 Me., 63; 6 Me., 636; 3 Mass., 280; 10 S. & R., *70; 37 Vt., 312; 5 Wend., 523; 2

N. H., 532; Goddard on Eas., 110; 13 L. R. A., 126; *17 Me., 169, 281; 12 Ill., 381; 50 N. J. Eq., 589; 3 N. H., 190; 151 N. Y., 396; 7 Ency., 2 ed., 14, 7. *Diversion by new ditch within scope of pleadings:* 10 Ency. P. & P., 1098; Story Eq. Plead., sec. 40; 65 Ia., 74; 71 S. C., 443. *Opening new ditch was commenced before action and continued after, and Court can relieve against:* 54 S. C., 434; 60 S. C., 391; 16 Ency., 343; 115 Ga., 340; 10 S. C., 476. *Injunction is plaintiff's remedy:* 10 Ency., 431; 16 Ency., 342; 2 Story Eq. Jur., 926-7; 10 S. C., 476; 21 N. J. Eq., 576; 13 Pick., 169; 20 L. R. A., 161; 1 High on Inj., 4 ed., 872, secs. 2, 708; 30 Ency., 370; 1 McC., ch. 180; 10 Ves., 192; 115 Ga., 340; 4 Lans., 47; 40 N. Y., 191; 69 N. Y., 16; L. R. A., ch. 221; 54 S. C., 437; 75 Conn., 66; 7 Bead., 127; 1 Sawy., 470; 103 Mass., 514.

*Messrs. Allen J. Green* and *Nelson & Nelson,* contra.

*Mr. Green* cites: *As to construction of deed:* 11 Rich. L., 621; 28 Ency., 1 ed., 1036, 1035. *Parol evidence proper to show that plaintiff agrees to take water and void surplus:* 26 S. C., 312; 41 S. C., 154, 163; 57 S. C., 60; 66 S. C., 60; 61 S. C., 166; 68 S. C., 523.

November 29, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff corporation commenced this action on December 31st, 1901, to perpetually enjoin defendants from diverting the waters of the spring and pond on defendant's land by opening and deepening a ditch, in violation of plaintiff's alleged easement therein, granted by the defendants. The issues of law and fact raised by the pleadings were tried before special Judge Carey, who made decree, dated July 26th, 1905, refusing injunction and dismissing the complaint, from which comes this appeal, upon numerous exceptions to his findings of fact and conclusions of law.

In 1894, Adeline J. Fowles purchased from Julia C. Marshall a three hundred acre tract near the southern limit of the city of Columbia, containing thereon at that time a permanent pond of water, known as the Marshall Pond, formed in a natural depression of the land and supplied by a spring basin on the northern side, by a spring known as Folk's Spring on the western side, and by the surface drainage and seepage from the surrounding slopes. There was at that time no natural or artificial drain for the pond waters, the old ditch dug by the Marshalls draining towards the right of way of the Southern Railway Company having been closed.

The Circuit Judge found as a fact that in 1896 the defendants cut the ditch, described now as the Fowles old ditch, to drain this land for the purpose of cultivation; that the ditch practically drained the pond and that the lands formerly covered by water, or a large portion thereof, were cultivated in the years 1897, 1898, 1899, 1900, in rice, corn, potatoes and hay, and used for a portion of the time as a pasture; that in the fall of 1900 the pond was nearly dry, the members of the board of health so testify; that during the winter and spring of 1901, considerable water, owing to the rains, collected in the basin of this pond.

The testimony further shows that in the early part of May, 1901, F. S. Royster, the president of the plaintiff company, with a view of purchasing a site for the erection of a fertilizer factory, secured the assistance of Wm. Barnwell, and they, in company with J. Newton Fowles, acting for his wife, inspected the premises. At this time the pond covered some four or five acres. Fowles represented that the springs supplying the pond were never failing and that he considered there was plenty of water for a manufacturing plant of any kind.

Royster and Barnwell did not observe any indications that the pond basin had been in cultivation. Water was then flowing through the old ditch dug by Fowles. According to Barnwell's testimony, he heard a conversation between Roy-

ster and Fowles during the negotiations as to disposing of the surplus water from the pond and keeping the pond down to its ordinary size, in which Fowles stated that he was then in a lawsuit with the Atlantic Coast Line to try to force them to leave the ditch (the old Marshall ditch) open, for the purpose of drawing away the overflow or surplus water from the pond, as it covered too much of his land and he could not use it, and that Mr. Royster said he was on friendly terms with the railroad company and that he thought he could arrange it for him, and would do his best to do so. Fowles testified that he informed Royster that he once had the ditch opened out to the railroad and drained the pond, that the railroad had stopped up the mouth of the ditch and that he had a suit with the railroad, with reference thereto; that Royster said that there would be no trouble about that, and agreed to open that old ditch and drain out to the railroad and that he would use the water all the way out, making a reservoir on his own land, the overflow to go out to the railroad. Fowles further testified that he told Royster that he was ready to clean out the ditch dug by him in 1896.

The negotiations were finally concluded by Barnwell, and on May 20th, 1901, the defendant, Mrs. Adeline J. Fowles, with full covenant of warranty, conveyed to the F. S. Royster Guano Company fifteen acres of her tract aforesaid by metes and bounds, the deed containing also the following grant:

"The right at all times to the free and unobstructed use of the waters of the spring and pond lying north of the parcel hereinbefore granted, and the right to open and maintain a ditch leading from said spring and pond across the land lying between the same and the parcel hereby granted, and the right of ingress and egress to and from the lands adjacent thereto for the purpose of opening, cleaning and maintaining said ditch."

The defendants thereafter sought an interview with F. S. Royster with reference to the drainage of the water on the

29—75

railroad right of way, and on August 21st, 1901, received a letter from Royster stating that he had instructed the superintendent to go ahead and dig the ditch as soon as he could contract therefor, and that he had written Mr. Kenly, of the Atlantic Coast Line, with reference to discharging on its track the overflow, and that he was confident there would be no difficulty and that the work would proceed at once.

The plaintiff dug its ditch into the pond and drew water therefrom into a reservoir on its own land as its needs required, but made no arrangement to take all the water of the spring and pond by providing for continuous drainage from the pond and a discharge of the overflow of its reservoir; on the contrary, plaintiff considered that it had the right to use the pond place as a natural reservoir for the storage of water for its uses when needed, and, therefore, a large part of the water remained ponded on defendant's land. The defendants, conceiving that plaintiffs had no right to store water on their land, made preparation to clean out the old ditch. It had been their custom to do this once or twice each year. After communicating with the plaintiff on that subject, defendants, on November 19th, 1901, received a letter from its vice-president, O. F. Burroughs, confirming the personal proposition made by defendant Fowles that plaintiff would pay one-half of the expense of cleaning out the ditch or overflow, provided same did not exceed ten dollars, stating that for the present they preferred the ditch not to be deepened, as they were putting in some apparatus that would possibly require all the water the pond would afford. Fowles went ahead and opened out the old ditch, the effect of which was to drain the pond. This ditching by Fowles was completed the 25th day of December, 1901, and this action was begun soon thereafter to restrain the diversion of the water of the spring and pond. After the commencement of the action, and to meet the situation caused by the opening of the Fowles old ditch, the Royster company deepened and extended their ditch across the pond place to the spring, and thereby was enabled to draw to the reservoir all the water

of the spring and pond.   The capacity of the reservoir is about 90,000 gallons, and plaintiff claims  to require about 45,000 gallons of water for its daily use.   The larger portion of the water is used for cooling the acid, which comes hot from the tower, to its normal temperature, so that it may the better take up the nitre fumes.   When the water supply is scarce, as it became in 1902, the same water is used several times, but this gradually heats the water and renders it less effective to cool the acid, hence there is a loss from the failure of acid to absorb the proper amount of nitre, and moreover, the water becomes somewhat acidulated and when used in generating steam tends to cause the boilers to pit.   For these reasons an abundant supply of water is needed by the plaintiff in its manufacturing enterprise, but, since plaintiff is now draining into its reservoir all the water of the spring and pond, the inadequacy of the water supply, if such exists, is a matter for which plaintiff has no redress against the defendant, unless the plaintiff has the right to pond or store water on defendant's premises.

The controlling question in the case, therefore, is as to the proper construction of the deed.   Upon this point we agree fully with the Circuit Court, that the deed conveyed only the right to use the water of the spring and pond and to enter and take it, but without the right to compel defendants to maintain the pond in its condition at the time of the sale or to leave water stored therein for plaintiff's use at its convenience.   Under the evidence there was no permanent pond there at the time of the sale, although it is true that by reason of the rains and the partial filling in of the Fowles old ditch the water covered the pond place for several acres.   But as already indicated, the evidence shows that for several years previous to the sale the pond had been practically. drained by means of the Fowles old ditch and nearly all the pond place used for pasturage and purposes of cultivation.   No representation was made by Fowles that the pond was a permanent body of water; on the contrary,

the evidence shows that the springs as a never failing source of water was the matter to which attention was specially directed. The evidence leaves little room to doubt that at the time of the sale the parties contemplated that there would be a drainage away of the surplus or overflow of the water of the spring and pond. The Royster Company contends that such surplus or overflow is the difference between the amount of water as it stood in the pond basin at the time of sale and any increase of such waters by reason of accumulation from rain, surface drainage or otherwise; whereas, Fowles contends that such surplus overflow is the difference between the water used by the plaintiff and the amount supplied by the spring and pond. The right claimed by defendants to·open and clean out the old ditch to its accustomed depth is perfectly consistent with the terms of the deed, construed in the light of the circumstances and conditions, and this right was recognized by the plaintiff in its offer to bear half the expenses of cleaning out said ditch, but objecting to its being deepened. There was a sharp contest as to whether this ditch was merely cleaned out to its original and accustomed depth, as claimed by Fowles, or was actually deepened beyond its original depth, as claimed by the Royster Company. All those who participated in cleaning out the ditch testified that the ditch was not deepened; whereas, plaintiff relied upon the opinion of experts, based upon the character of the soil taken out. We cannot say that the preponderance of the evidence is against the conclusion of the Circuit Court that the ditch was not opened below its original depth. This being so, the Circuit Court committed no error in denying the relief sought with respect to the cleaning out and opening of the "old ditch" previous to the commencement of this action.

The Circuit Court further held that in November, 1903, the defendants partly opened an old ditch leading in the direction of the spring basin opposite the plaintiff's works, and at the upper end of the ditch dug a new ditch for a few

yards, the effect of which was to divert the water from the spring basin in such a way that it could not enter the ditch of the plaintiff, cut for the purpose of carrying the water to its works, but that the Court had no right to make any order as to this partially old and partially new ditch, as the acts were done after the commencement of the action, and such relief was not within the scope of the complaint.

In this we think Judge Carey under-rated the power of the Court of equity under the pleadings in this case. Equity will not do justice by halves, but will render full and complete relief in determining the rights of the parties within the scope of the pleadings. *Phillips* v. *Anthony,* 47 S. C., 463; 25 S. E., 294; *Butler* v. *Butler,* 67 S. C., 212, 45 S. E., 184. If the diversion of the water of the spring from the Royster supply ditch by means of the new ditch is within the scope of the pleadings, relief should be had in this proceeding and not drive plaintiff to another action to test its rights in the premises. The complaint sets forth in full plaintiff's claim to the water of the spring and pond, and alleges not only the actual diversion of such waters by opening and deepening the old ditch, but also further threatened diversion of said water in violation of the grant, and the prayer of the complaint was for injunction to close and keep closed the old ditch and from further diverting the water from said pond in any way or causing any further flow of water therefrom.

A temporary injunction herein was granted by Associate Justice Jones on June 23d, 1902, restraining defendants from further opening and deepening said ditch or further diverting the water from said spring and pond. Thereafter the "new ditch" was opened, and upon a rule to show cause why the defendants should not be adjudged in contempt for disobedience of said order, it was adjudged on December 9th, 1903, that defendant had violated said temporary injunction and they were ordered to close said new ditch, which order was promptly obeyed. Thus, the digging of the new ditch was treated by all parties as within the scope

of the pleadings. While the complaint was designed to prevent breach of plaintiff's rights by diverting the water of the spring and pond, the fact that some particular method of diversion not specifically mentioned in the complaint was adopted after the commencement of the suit would not make such act beyond the scope of the pleadings. On the contrary, it offered evidence that the injury threatened had become real during the pendency of the action. What is called the "new ditch" is but a branch extension of the old ditch and it really operated to divert the water of the spring from the Royster supply ditch out through the old ditch, thus linking this particular act of diversion with acts specifically alleged in the complaint.

While we hold that defendants were within their rights, in so far as they, by their old ditch, drained away the water which plaintiffs did not see fit to use, but left ponded or stored on defendants' premises, we also hold that they breached plaintiff's rights when they, by their new ditch, interrupted the water flowing from the spring into the plaintiff's supply ditch ready to receive it for plaintiff's uses. The fact that defendants, in obedience to the order enforcing the temporary injunction, restored the status by closing the mouth of the new ditch, is no guarantee that the new ditch will not be again opened when such temporary injunction is made null by a decree dismissing the complaint. Judge Carey was, therefore, in error in not considering this matter and in not enjoining such diversion of water from plaintiff's use. The case being now fully within the chancery powers of this Court, we will grant the relief to which plaintiff is entitled upon the undisputed facts.

We have not undertaken to consider in detail the numerous exceptions which, with Judge Carey's decree, are reported herewith, but they are, in all material respects, controlled by the conclusions we have reached.

The judgment of the Circuit Court dismissing the complaint is reversed and the complaint retained for the purpose of enjoining defendants from diverting the water of the

spring from plaintiff's supply ditch by means of defendants' new ditch, and the defendants, their agents, servants and employees, are hereby required and commanded to close and keep closed said new ditch. In all other respects the conclusions and decree of the Circuit Court are affirmed.